IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KELLY L. HUTTO,
    Plaintiff,

vs.                                    Case No.: 3:19cv1401/LAC/EMT

DR. NICHOLAS DELGADO et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kelly L. Hutto ("Hutto"), a pre-trial inmate of the Okaloosa County Department of Corrections housed at the County jail ("Jail"), is proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Hutto is suing the Okaloosa County Board of County Commissioners ("County") (the municipality which operates the Jail), Corizon Health, Inc. ("Corizon") (the private entity which contracts with the County to provide medical services to inmates), and Dr. Nicholas Delgado (a doctor employed by Corizon as a physician at the Jail). Hutto brings Eighth Amendment claims against Defendants. He claims Corizon and Dr. Delgado were deliberately indifferent to his need for treatment of Hepatitis A. Hutto claims the County's alleged policy or custom of failing to provide adequate shower, restroom, and other cleaning supplies to inmates exposes him to a substantial risk of serious harm. In his Complaint, Hutto requests declaratory relief and monetary damages.

Presently before the court is Hutto's "Motion for a Temporary Restraining Order and a Preliminary Injunction," with an attached supporting Memorandum and Declaration (ECF No. 18).  Hutto seeks a preliminary injunction requiring Defendants to "arrange for an examination and plan of treatment by a qualified specialist," and "carry out that plan of treatment" (*id.* at 1).  Corizon and Dr. Delgado filed a Response in opposition to Hutto's motion, with supporting materials (ECF Nos. 20, 21).  The County joined the Response filed by Corizon and Dr. Delgado (ECF No. 22).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).  After careful consideration of the parties' submissions, it is the opinion of the undersigned that Hutto is not entitled to a preliminary injunction.

I.      GOVERNING LEGAL STANDARDS

   A.   <u>Preliminary Injunction Standard</u>

A plaintiff seeking a preliminary injunction must establish four prerequisites: (1) he has a substantial likelihood of success on the merits of his claim; (2) he faces a substantial threat of irreparable injury if an injunction is not issued; (3) the threatened injury to the plaintiff outweighs the potential harm to the defendants; and (4) an injunction will not disserve the public interest.  *See Wreal, LLC v.*

*Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).  A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the plaintiff clearly establishes the burden of persuasion as to <u>each</u> of the four requisites.  *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (emphasis added).

When brought by convicted prisoners, claims of deliberate indifference to serious medical needs proceed under the Cruel and Unusual Punishment Clause of the Eighth Amendment.  *See Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013).  Pretrial detainees, however, must proceed under the Due Process Clause of the Fourteenth Amendment.  *See Dang by and through Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (citations omitted).  Nevertheless, the minimum standard for providing medical care to a pretrial detainee is identical to the minimum standard required by the Eighth Amendment for a convicted prisoner; therefore, the claim is analyzed under the decisional law of both Amendments.  *Id.* (citation omitted).

Stating a claim of inadequate medical treatment requires satisfying two minima (from which the case law has ultimately derived four requirements).  First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'"  *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347,

101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See Wilson*, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphases in original)).

In the context of denial of medical treatment, each of these minima has been more specifically described as encompassing two subsidiary requirements. To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state

law, *Estelle*, 429 U.S. at 105–06.  Conduct that is more than merely negligent includes:  "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

A plaintiff may also establish deliberate indifference by showing "[a] complete denial of readily available treatment," or that the defendants "delay[ed] necessary treatment for non-medical reasons."  *Bingham*, 654 F.3d at 1176.  To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *Estelle*, 429 U.S. at 105, which is in turn defined as requiring two separate things:  "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837.

In the prison context, the court must "distinguish between evidence of disputed facts and disputed matters of professional judgment." *Beard v. Banks*, 548 U.S. 521, 530, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006).  A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment.  *See Estelle*, 429 U.S. at 107–08.  Further, a mere disagreement between an inmate and the prison's medical staff as to the course of treatment does not establish deliberate indifference.  *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th

Cir. 1991) (citations omitted). Moreover, "[w]here a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A municipality, or functional equivalent thereof, is not liable under section 1983 for injuries caused solely by its employees, *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004), and may be held liable only when the execution of a government policy or custom causes the injury.[1] *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). There are several different ways of establishing municipal liability under § 1983. A municipality may be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 661, 694−95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *McCusik v. City of Melbourne*, 96 F.3d 478, 483 (11th Cir. 1996). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's

---

[1] A governmental entity having custody of an inmate bears an affirmative obligation to provide the inmate with adequate medical care. Where the government delegates that function to a private medical provider, and the private party voluntarily assumes it by contract—as did Defendant Corizon—the private party becomes a state actor within the meaning of § 1983. *See West v. Atkins*, 487 U.S. 42, 54–57, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) ("When a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. In so doing, it becomes the functional equivalent of the municipality.").

Case No.:  3:19cv1401/LAC/EMT

standard operating procedure.  *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 n.11 (11th Cir. 1991).  And a municipality may be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."  *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002).  So not all theories of municipal liability under § 1983 require (or depend on) a single final policymaker.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016).

II.   FACTS[2]

Hutto was booked into the Jail on August 26, 2018 (Affidavit of Nicholas Delgado, M.D. ¶ 3, ECF No. 20-1).  At that time Hutto disclosed a history of untreated Hepatitis-C, diagnosed in 2016, and the use of IV methamphetamine, which was likely the cause of that virus (*id.*).

On September 20, 2018, Hutto presented to Dr. Delgado with complaints of difficulty breathing, nausea, poor appetite, and pain in the right upper quadrant of his abdomen (Declaration of Kelly L. Hutto ¶ 2, ECF No. 18; Delgado Aff. ¶ 4; Condensed Health Services Encounter ("Jail Medical Records) at 1, ECF No. 20-2).

---

[2] The facts included in this section represent the court's findings of fact.  The facts are sourced from Hutto's Declaration (ECF No. 18 at 2–4), Dr. Delgado's declaration (ECF No. 20-1), and Hutto's medical records submitted by Corizon and Dr. Delgado (ECF Nos. 20-2, 20-3).

Case No.:  3:19cv1401/LAC/EMT

Dr. Delgado examined Hutto and observed a jaundiced appearance and tenderness in the right upper quadrant of his abdomen (Delgado Aff. ¶ 4; Jail Medical Records at 1). Dr. Delgado ordered a CBC CMP blood test, which indicated an elevated total bilirubin level (Jail Medical Records at 2). Dr. Delgado ordered Hutto transferred to a hospital (Hutto Decl. ¶ 3; Delgado Aff. ¶ 4; Jail Medical Records at 2).

At the hospital, doctors diagnosed Hutto with Hepatitis-A and noted his history of chronic Hepatitis C (Hutto Decl. ¶ 3; Delgado Aff. ¶ 5; Santa Rosa Medical Center Discharge Report ("Hospital Discharge Report"), ECF No. 20-3). Hepatitis A is a disease with no cure, but it resolves on its own in nearly all cases without medical intervention (Delgado Aff. ¶ 5). As with all acute forms of Hepatitis, Hepatitis A is indicated by a jaundiced appearance and an increased bilirubin level (*id.*). Hepatitis A is treated with fluids and nutritional supplements (*id.*). Further complications are very rare (*id.*). Between 10 and 15 percent of persons who are infected with Hepatitis A will have a relapse up to six months after the acute illness has resolved, but there is no such thing as chronic Hepatitis A (*id.*).

At the hospital, Hutto received an ultrasound of his abdomen and was treated with fluids (Hospital Discharge Report). Upon Hutto's discharge on September 25, 2018, Dr. Kalaji prescribed Tramadol (a pain reliever) and Zofran (an anti-nausea medication) to relieve Hutto's symptoms (*id.*). Dr. Kalaji recommended that Hutto follow-up with his primary care physician for a re-check for Hepatitis A, and to

follow-up with a <u>gastroenterologist</u> for treatment of <u>Hepatitis C</u> (Delgado Aff. ¶ 6; Hospital Discharge Report).

On September 27, 2018, two days after Hutto's discharge from the hospital, Dr. Delgado ordered a blood test (Jail Medical Records at 3–6). The test indicated an elevated total bilirubin level of 4.3, with the normal range being <1.2 (*id.*). Dr. Delgado ordered another blood test six days later, on October 3, 2018 (*id.* at 7–10). Hutto's total bilirubin level had decreased to 1.7, nearly within normal range (*id.*). By February of 2019, Hutto's total bilirubin level was within normal range (Jail Medical Records at 11–16). Since then, Dr. Delgado has ordered routine blood tests, all of which indicated Hutto's total bilirubin level was within normal range (Delgado Aff. ¶ 7; Jail Medical Records at 21–45).[3]

Hutto states he is still experiencing "pain and symptoms related to Hepatitis A" (Hutto Decl. ¶ 7). But Dr. Delgado states Hutto has not exhibited any symptoms of Hepatitis-A (Delgado Aff. ¶ 5). Dr. Delgado states Hutto's Hepatitis A followed the usual course—he did not relapse (*id.*).

III.   DISCUSSION[4]

---

[3] Dr. Delgado ordered blood tests on February 28, March 12, May 3, May 10, June 18, and August 12, 2019 (Jail Medical Records at 21–45).

[4] In his motion for preliminary injunctive relief Hutto seeks relief related only to his Eighth Amendment claim concerning the failure to treat his Hepatitis A. The motion does not seek relief related to the claim concerning the County's failure to provide adequate cleaning supplies.

Case No.:  3:19cv1401/LAC/EMT

Hutto failed to satisfy his burden on any of the four prerequisites for preliminary injunctive relief. With respect to the first requirement, i.e., a substantial likelihood of success on the merits of his Eighth Amendment claim, Hutto has not demonstrated Dr. Delgado failed to treat the Hepatitis A. When Hutto presented with symptoms, Dr. Delgado sent him to the hospital. Hutto claims that Dr. Delgado failed to follow Dr. Dr. Kalaji's discharge instructions with respect to the Hepatitis A, but Hutto's medical records refute this claim. Dr. Kalaji's only discharge instructions with respect to the Hepatitis A were to take the medications he prescribed (to relieve pain and nausea) and follow-up with a primary care physician within 2–3 days. That is exactly what occurred. Beginning two days after Hutto's discharge, Dr. Delgado monitored Hutto's total bilirubin level, which soon returned to a normal level. Dr. Delgado has continued to monitor Hutto's condition, and the Hepatitis A has not recurred. The basis of Hutto's Eighth Amendment claim is his mistaken belief that Dr. Kalaji ordered him to be seen by a specialist for his Hepatitis A, but that is not what Dr. Kalaji ordered. Hutto's discharge report demonstrates Dr. Kalaji recommended follow-up with a specialist with respect to the Hepatitis C.[5]

---

[5] Hutto does not assert an Eighth Amendment claim with respect to treatment of his Hepatitis C (*see* Complaint). But even if he did, he has not shown a substantial likelihood of success on the merits. Hepatitis C is monitored by conducting serial blood analysis, to detect an increased bilirubin level, and liver ultrasounds (Delgado Aff. ¶¶ 5, 7). In addition to the previously mentioned blood tests, which indicate Hutto's total bilirubin level returned to normal soon after his discharge from the hospital, Dr. Delgado ordered an ultrasound of Hutto's abdomen in February of 2019, which indicated no abnormalities with respect to Hutto's liver (Delgado Aff. ¶ 7; Jail Medical Records at 46).

Hutto has not shown a substantial likelihood of success on his deliberate indifference claim.

Additionally, Hutto failed to satisfy his burden of demonstrating he faces a substantial threat of irreparable injury if the court does not grant the preliminary injunction he seeks. Hutto's Hepatitis A resolved; his condition continues to be monitored; and there is no indication of a recurrence. Hutto has not shown he faces any threat of injury, let alone a substantial threat of irreparable injury. And Because Hutto faces no threat of injury, he has not satisfied the third prerequisite for preliminary injunctive relief, i.e., that the threat of injury to him if the court does not grant an injunction outweighs the potential harm to the defendant if the court grants one. With respect to the fourth requirement, Hutto has not shown that an injunction will not disserve the public interest. The court's ordering a medically unnecessary consultation with a specialist will indeed disserve the public interest.

Hutto failed to satisfy all four prerequisites for preliminary injunctive relief. Therefore, the court should deny the "Motion for a Temporary Restraining Order and a Preliminary Injunction" (ECF No. 18).

Accordingly, it is respectfully **RECOMMENDED**:

That Plaintiff's "Motion for a Temporary Restraining Order and a Preliminary Injunction" (ECF No. 18) be **DENIED**.

At Pensacola, Florida, this 10th day of September 2019.

                        */s/ Elizabeth M. Timothy*
                        **ELIZABETH M. TIMOTHY**
                        **CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**