IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KELLY L. HUTTO,
     Plaintiff,

vs.                            Case No.: 3:19cv1401/LAC/EMT

DR. NICHOLAS DELGADO et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Defendants' motions to dismiss or for summary judgment with supporting evidentiary materials (ECF Nos. 29, 33, 35). Plaintiff filed a response in opposition to the motions, with supporting evidentiary materials (ECF Nos. 34, 42). Defendants filed a reply (ECF Nos. 44, 45).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of the parties' submissions and the relevant law, the undersigned concludes that Defendants' motions for summary judgment should be granted.

I.      BACKGROUND

Plaintiff Kelly L. Hutto ("Hutto"), a pre-trial inmate of the Okaloosa County Department of Corrections housed at the County jail ("Jail"), is proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Hutto is suing the Okaloosa County Board of County Commissioners ("County") (the municipality which operates the Jail), Corizon Health, Inc. ("Corizon") (the private entity which contracts with the County to provide medical services to Jail inmates), and Dr. Nicholas Delgado (a doctor employed by Corizon as a physician at the Jail). Hutto brings Eighth Amendment claims against Defendants. He claims Corizon and Dr. Delgado were deliberately indifferent to his need for treatment of Hepatitis A. Hutto claims the County's alleged policy or custom of failing to provide adequate cleaning supplies at the Jail caused him to contract Hepatitis A and exposes him to a substantial risk of serious harm. Hutto seeks declaratory relief and monetary damages.

All Defendants were served with process. The County contends Hutto's claim against it is subject to dismissal on two grounds: (1) Hutto failed to exhaust administrative remedies, and (2) Hutto's allegations fail to state a plausible Eighth Amendment claim (County's Motion to Dismiss at 6–10, ECF No. 29). Corizon and Dr. Delgado contend they are entitled to judgment in their favor on the ground that

there is no genuine issue of material fact regarding the medical treatment Hutto received for Hepatitis A, and the material facts demonstrate they are entitled to judgment as a matter of law on Hutto's Eighth Amendment claims (Corizon and Dr. Delgado's Motion to Dismiss or for Summary Judgment, ECF No. 33). Corizon and Dr. Delgado rely upon the evidentiary materials they submitted in opposition to Hutto's motion for preliminary injunction, specifically, Dr. Delgado's affidavit and Hutto's medical records (*see* ECF No. 20). The County joined in Corizon and Dr. Delgado's Motion to Dismiss or for Summary Judgment (*see* Notice of Joinder, ECF No. 35).

## II.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.*

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004); *see also Celotex Corp.*, 477 U.S. at 324. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See Celotex Corp.*, *supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the

nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Regarding the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions**.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> . . . .
> **(4) Affidavits or Declarations**. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Facts asserted in hearsay statements which are not subject to a hearsay exception, and thus would not be admissible in evidence, are insufficient to show

that a fact is genuinely disputed. "The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (citing *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996)). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999); Fed. R. Civ. P. 56(c).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment or grant summary judgment if the moving party's motion and supporting materials— including the facts considered undisputed—show that the moving party is entitled to it. *See* Fed. R. Civ. P. 56(e)(2, 3).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F. 3d 1271, 1282 (11th Cir. 1999). Nonetheless, the nonmoving party still bears the

burden of coming forward with sufficient evidence of every element that he or she must prove. *See Celotex Corp.*, 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

> **B.    Fourteenth Amendment**

When brought by convicted prisoners, claims of deliberate indifference to serious medical needs proceed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). Pretrial detainees, however, must proceed under the Due Process Clause of the Fourteenth Amendment. *See Dang by and through Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (citations omitted). Nevertheless, the minimum standard for providing medical care to a pretrial detainee is identical to the minimum standard required by the Eighth Amendment for a convicted prisoner; therefore, the claim is analyzed under the decisional law of both Amendments. *Id.* (citation omitted).

Stating a claim of inadequate medical treatment requires satisfying two minima (from which the case law has ultimately derived four requirements). First,

there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See Wilson*, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphases in original)).

In the context of denial of medical treatment, each of these minima has been more specifically described as encompassing two subsidiary requirements. To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A serious medical need is "one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, *Estelle*, 429 U.S. at 105–06. Conduct that is more than merely negligent includes: "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

A plaintiff may also establish deliberate indifference by showing "[a] complete denial of readily available treatment," or that the defendants "delay[ed] necessary treatment for non-medical reasons." *Bingham*, 654 F.3d at 1176. To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *Estelle*, 429 U.S. at 105, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837.

In the prison context, the court must "distinguish between evidence of disputed facts and disputed matters of professional judgment." *Beard v. Banks*, 548 U.S. 521, 530, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006). A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment. *See Estelle*, 429 U.S. at 107–08. Further, a mere disagreement between an inmate and the prison's medical staff as to the course of treatment does not establish deliberate indifference. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). Moreover, "[w]here a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

The conditions under which pretrial detainees are held are also reviewed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause applicable to convicted prisoners. *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016). However, the Eleventh Circuit historically has treated convicted prisoners' Eighth

Amendment claims and pretrial detainees' Fourteenth Amendment claims identically. *See, e.g., Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (stating that "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments" (quotation omitted)).[1]

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotation marks and citation omitted). At a minimum, the Constitution requires prison officials to provide adequate food, clothing, shelter, and medical care. *Id.* The prisoner bears the burden of proving that the challenged prison condition is "extreme" and "pose[s] an unreasonable risk of serious damage to the [prisoner's] future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotation marks and citation omitted). In order to violate the

---

[1] In *Kingsley v. Hendrickson*, the Supreme Court stated that the language of the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fourteenth Amendment's Due Process Clause "differs, and the nature of the claims often differ." — U.S. —, 135 S. Ct. 2466, 2473–76, 192 L. Ed. 2d 416 (2015) (adopting a different test to evaluate pretrial detainees' excessive-force claims than the test used to evaluate convicted prisoners' excessive-force claims). The Eleventh Circuit recently stated, however, that *Kingsley* "is not squarely on point with and does not actually abrogate or directly conflict with" precedent outside of the context of an excessive-force claim. *See Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (quotations omitted).

Constitution, the risk of harm from the condition must be "so grave that it violates contemporary standards of decency to expose **anyone** unwillingly to such a risk." *Id.* (quotation marks and citation omitted) (emphasis in original).

Besides this objective component, the prisoner must satisfy a subjective prong by showing that the prison officials acted with deliberate indifference. *Chandler*, 379 F.3d at 1289. Deliberate indifference, in turn, has three elements: (1) the defendant's subjective knowledge of a risk of serious harm, (2) disregard of that risk, (3) by conduct that is more than gross negligence. *See Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). The evidence must demonstrate that, "with knowledge of the infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions." *Id.* (alteration and quotation omitted).

A municipality, or functional equivalent thereof, is not liable under section 1983 for injuries caused solely by its employees, *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004), and may be held liable only when the execution of a government policy or custom causes the injury.[2] *City of Canton v. Harris*, 489 U.S.

---

[2] A governmental entity having custody of an inmate bears an affirmative obligation to provide the inmate with adequate medical care. Where the government delegates that function to a private medical provider, and the private party voluntarily assumes it by contract—as did Defendant Corizon—the private party becomes a state actor within the meaning of § 1983. *See West v. Atkins*, 487 U.S. 42, 54–57, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) ("When a private entity . . . contracts with a county to provide

378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). There are several different ways of establishing municipal liability under § 1983. A municipality may be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 661, 694−95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *McCusik v. City of Melbourne*, 96 F.3d 478, 483 (11th Cir. 1996). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 n.11 (11th Cir. 1991). And a municipality may be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). So not all theories of municipal liability under § 1983 require (or depend on) a single final policymaker. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016).

---

medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. In so doing, it becomes the functional equivalent of the municipality.").

III.   MATERIAL FACTS

As this case comes before the court on Defendants' motions for summary judgment, the court is required to view the facts in the light most favorable to Hutto, the nonmoving party.  *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).   The court does so here, referring to Hutto's verified Complaint, and also considering those facts from the parties' pleadings and summary judgment materials of record.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to summary judgment); Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1(B), (C), (F).  Matters stated below as "facts" for purposes of summary judgment may not be the actual facts.  *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Hutto was booked into the Jail on August 26, 2018 (Affidavit of Nicholas Delgado, M.D. ¶ 3, ECF No. 20-1; Hutto's Response to Motion for Summary Judgment at 10, ECF No. 42).[3]  At that time Hutto disclosed a history of untreated

---

[3] Hutto's Response (titled "Motion for Relief of Motion to Dismiss and Summary Judgment [sic]") is signed under penalty of perjury (*see* ECF No. 42 at 21).

Case No.:  3:19cv1401/LAC/EMT

Hepatitis C, diagnosed in 2016, and the use of IV methamphetamine, which was likely the cause of that virus (Delgado Aff. ¶ 3, ECF No. 20-1).

On September 20, 2018, Hutto presented to Dr. Delgado with complaints of difficulty breathing, nausea, poor appetite, and pain in the right upper quadrant of his abdomen (Hutto's Declaration in Support of Motion for Temporary Restraining Order and Preliminary Injunction ¶ 2, ECF No. 18; Delgado Aff. ¶ 4, ECF No. 20-1; Condensed Health Services Encounter ("Jail Medical Records) at 1, ECF No. 20-2).   Dr. Delgado examined Hutto and observed a jaundiced appearance and tenderness in the right upper quadrant of his abdomen (Delgado Aff. ¶ 4, ECF No. 20-1; Jail Medical Records at 1, ECF No. 20-2).   Dr. Delgado ordered a CBC CMP blood test, which indicated an elevated total bilirubin level (Jail Medical Records at 2, ECF No. 20-2).   Dr. Delgado ordered Hutto transferred to a hospital (Hutto Decl. ¶ 3, ECF No. 18; Delgado Aff. ¶ 4, ECF No. 20-1; Jail Medical Records at 2, ECF No. 20-2).

At the hospital, doctors diagnosed Hutto with Hepatitis A and noted his history of chronic Hepatitis C (Hutto Decl. ¶ 3, ECF No. 18; Delgado Aff. ¶ 5, ECF No. 20-1; Santa Rosa Medical Center Discharge Report ("Hospital Discharge Report"), ECF No. 20-3).   Hepatitis A is a disease with no cure, but it resolves on

its own in nearly all cases without medical intervention (Delgado Aff. ¶ 5, ECF No. 20-1). As with all acute forms of Hepatitis, Hepatitis A is indicated by a jaundiced appearance and an increased bilirubin level (*id.*). Hepatitis A is treated with fluids and nutritional supplements (*id.*). Further complications are very rare (*id.*). Between 10 and 15 percent of persons who are infected with Hepatitis A will have a relapse up to six months after the acute illness has resolved, but there is no such thing as chronic Hepatitis A (*id.*).

At the hospital, Hutto received an ultrasound of his abdomen and was treated with fluids (Hospital Discharge Report, ECF No. 20-3). Hutto had no liver manifestations from any disease (*id.*). Upon Hutto's discharge on September 25, 2018, Dr. Kalaji prescribed Tramadol (a pain reliever) and Ondansetron (an anti-nausea medication) **as needed** to relieve Hutto's symptoms (*id.*). Dr. Kalaji recommended that Hutto follow-up with his **primary care physician** for a re-check for **Hepatitis A**, and to follow-up with a **gastroenterologist** for treatment of **Hepatitis C** (Delgado Aff. ¶ 6, ECF No. 20-1; Hospital Discharge Report, ECF No. 20-3).

Upon Hutto's return to the Jail, he was placed in the Medical Housing Unit for observation for twelve (12) days (Hutto's Response to Motion for Summary

Judgment at 6–7, ECF No. 42).  Hutto was provided ibuprofen (a pain reliever) (*id.* at 6).  On September 27, 2018, two days after Hutto's discharge from the hospital, Dr. Delgado ordered a blood test (Jail Medical Records at 3–6, ECF No. 20-2).  The test indicated an elevated total bilirubin level of 4.3, with the normal range being <1.2 (*id.*).  Dr. Delgado ordered another blood test six days later, on October 3, 2018 (*id.* at 7–10).  Hutto's total bilirubin level had decreased to 1.7, nearly within normal range (*id.*).  By February of 2019, Hutto's total bilirubin level was within normal range (*id.* at 11–16).  Since then, Dr. Delgado has ordered routine blood tests, all of which indicated Hutto's total bilirubin level was within normal range (Delgado Aff. ¶ 7, ECF No. 20-1; Jail Medical Records at 21–45, ECF No. 20-2).[4]

Hutto states he is still experiencing "pain and symptoms related to Hepatitis A" (Hutto Decl. ¶ 7, ECF No. 18).  But Dr. Delgado states Hutto has not exhibited any symptoms of Hepatitis A (Delgado Aff. ¶ 5, ECF No. 20-1).  Dr. Delgado states Hutto's Hepatitis A followed the usual course—he did not relapse (*id.*).

With respect to the County, Hutto alleges on September 10, 2018, the dishwasher at the jail broke, so inmates' food trays were hand washed for

---

[4] Dr. Delgado ordered blood tests on February 28, March 12, May 3, May 10, June 18, and August 12, 2019 (Jail Medical Records at 21–45, ECF No. 20-2).

approximately one week (Complaint at 7, ECF No. 1; Hutto's Response to Motion for Summary Judgment at 5, ECF No. 42). Hutto alleges the County has a policy of "keeping the passing of cleaning supplys [sic] to a minimum to save money" (Complaint at 8, ECF No. 1). Hutto alleges the County's failure to provide adequate cleaning supplies caused him to contract Hepatitis A (Hutto's Response to Motion for Summary Judgment at 10, ECF No. 42). Dr. Delgado states, "With overwhelming certainty, Mr. Hutto did not contract Hepatitis A while he was in the Jail." (Delgado Aff. ¶ 8, ECF No. 20-2). Dr. Delgado states Hepatitis A is passed from person to person (*id.*). ). Dr. Delgado states Hutto contracted the disease prior to his arrest, and the disease "percolated" until symptoms appeared on September 20, 2018, approximately three weeks after Hutto's arrest, which is the normal course of the disease (*id.*). Dr. Delgado states the Jail had only two other confirmed cases of Hepatitis A, and both of those patients entered the Jail already infected with Hepatitis A (*id.*).

IV.   DISCUSSION

Viewing the evidence in the light most favorable to Hutto, neither Corizon nor Dr. Delgado was deliberately indifferent to Hutto's need for treatment of Hepatitis A. When Hutto presented with symptoms of Hepatitis A, Dr. Delgado sent him to

the hospital.  Hutto claims that Dr. Delgado failed to follow Dr. Dr. Kalaji's discharge instructions with respect to the Hepatitis A, but Hutto's medical records refute this claim.  Dr. Kalaji's only discharge instructions with respect to the Hepatitis A were to take medications to relieve symptoms (pain and nausea) and follow-up with a primary care physician within 2–3 days.  Hutto admits he received medication for pain (ibuprofen).  Additionally, beginning two days after Hutto's discharge from the hospital, Dr. Delgado monitored Hutto's total bilirubin level, which soon returned to a normal level.  Dr. Delgado has continued to monitor Hutto's condition, and the Hepatitis A has not recurred.  The basis of Hutto's Eighth Amendment claim is his mistaken belief that Dr. Kalaji ordered him to be seen by a specialist for his Hepatitis A, but that is not what Dr. Kalaji ordered.  Hutto's discharge report demonstrates Dr. Kalaji recommended follow-up with a specialist with respect to Hutto's Hepatitis C.[5]

---

[5] Hutto does not assert an Eighth Amendment claim with respect to treatment of his Hepatitis C (*see* Complaint, ECF No. 1).  But even if he did, he has not shown a substantial likelihood of success on the merits.  Hepatitis C is monitored by conducting serial blood analysis, to detect an increased bilirubin level, and liver ultrasounds (Delgado Aff. ¶¶ 5, 7, ECF No. 20-1).  In addition to the previously mentioned blood tests, which indicate Hutto's total bilirubin level returned to normal soon after his discharge from the hospital, Dr. Delgado ordered an ultrasound of Hutto's abdomen in February of 2019, which indicated no abnormalities with respect to Hutto's liver (Delgado Aff. ¶ 7, ECF No. 20-1; Jail Medical Records at 46; ECF No. 20-2).

Hutto has not shown a genuine issue of material fact as to whether Corizon or Dr. Delgado was deliberately indifferent to his need for treatment of Hepatitis A. Viewing the material facts in Hutto's favor, neither Corizon nor Dr. Delgado exhibited deliberate indifference.  Therefore, they are entitled to judgment in their favor.

This leaves Hutto's claim against the County.  Hutto alleges the County had a policy or custom of providing inadequate supplies for cleaning surfaces, showers, and toilets at the Jail, in order to save money.  Hutto contends the lack of adequate cleaning supplies caused him to contract Hepatitis A and places him at risk of future harm.  The County disputes Hutto's assertion that it has a policy of providing inadequate supplies to clean surfaces, showers, and toilets.

Hutto has not proffered any evidence that the County adopted an official decision which resulted in the deprivation of basic elements of cleanliness at the Jail. Nor has Hutto shown that that the County's governing body had any actual or constructive knowledge that the Jail lacked adequate cleaning supplies (if indeed it lacked adequate supplies).

Additionally, the facts viewed in Hutto's favor do not permit a fact finder to reasonably infer that the conditions at the Jail were extreme and posed an

unreasonable risk of serious damage to his future health or safety. Dr. Delgado states "[w]ith overwhelming certainty" that Hutto did not contract Hepatitis A while he was in the Jail (Delgado Aff. ¶ 8, ECF No. 20-1). Dr. Delgado additionally states that Hepatitis A is transferred from person to person (*id.*). This evidence refutes Hutto's assertion that he contracted Hepatitis A due to unsanitary surfaces, showers, and toilets at the Jail.

Hutto has not demonstrated a genuine issue of material fact as to whether a custom or policy of the County resulted in unconstitutional conditions of confinement at the Jail. There is no evidence of the existence of a policy of custom of providing inadequate cleaning supplies at the Jail. Furthermore, there is no evidence that the amount of cleaning supplies provided posed a substantial risk of serious harm to Hutto's health. Therefore, the County is entitled to judgment in its favor.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Defendants' motions to dismiss or for summary judgment (ECF Nos. 29, 33, 35) be **GRANTED**

2.     That the clerk of court be directed to enter judgment in favor of Defendants and against Plaintiff.

Case No.:  3:19cv1401/LAC/EMT

At Pensacola, Florida, this <u>22nd</u> day of November 2019.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**